**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 96-4605

JACKIE NATHANIEL JACKSON, JR.,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 96-4606

JACKIE NATHANIEL JACKSON, JR.,
Defendant-Appellant.

Appeals from the United States District Court
for the Western District of North Carolina, at Charlotte.
Richard L. Voorhees, Chief District Judge.
(CR-93-252, CR-95-146)

Submitted: March 24, 1998

Decided: June 19, 1998

Before WILKINS, NIEMEYER, and HAMILTON,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

John Stuart Bruce, Acting Federal Public Defender, Greensboro, North Carolina, for Appellant. Mark T. Calloway, United States Attorney, Robert J. Higdon, Jr., Assistant United States Attorney, Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In 1994, without benefit of a plea agreement, Jackie Nathaniel Jackson, Jr., pled guilty to conspiracy to possess with intent to distribute and to distribute cocaine base, 21 U.S.C. § 846 (1994), and to aiding and abetting the possession of cocaine base with intent to distribute, 21 U.S.C. § 841(a)(1) (1994), 18 U.S.C. § 2 (1994). He was released on bond after his guilty plea, but failed to appear for sentencing. In 1995, authorities learned where Jackson was living and he was arrested after a high-speed chase. He then entered into a plea agreement and pled guilty to failure to appear, 18 U.S.C.A. § 3146(a)(1) (West Supp. 1997). Jackson was sentenced to a term of 200 months imprisonment for the drug offenses and to a consecutive 62-month term for failure to appear. He appeals his sentences and the district court's denial of his motion to withdraw his guilty plea to the drug offenses. Jackson seeks leave to file a pro se supplemental brief challenging his sentence. We grant leave to file the supplemental brief and affirm.

Just before he was sentenced, Jackson moved to withdraw his guilty plea to the crack offenses. He alleged that his plea was not knowing and voluntary because he had relied on his first attorney's assurance that he would receive a sentence of ten years or less. In response, the government submitted an affidavit from the attorney,

2

who denied making such a promise. The attorney stated that he told Jackson that he expected the guideline range to be 135 to 168 months imprisonment, but that because of a prior drug conviction Jackson was exposed to a sentence of twenty years to life. He also told Jackson that the government had agreed informally to withdraw the information it had previously filed under 21 U.S.C. § 851 (1994) for the sentence enhancement in return for his plea and to allow him to cooperate in the hope of receiving a substantial assistance departure under USSG § 5K1.1, p.s.* or Fed. R. Crim. P. 35. The attorney further stated that the case agent did not interview Jackson, but asked him to write down the information he could offer. Jackson did so in a letter to his attorney. He then absconded.

Before sentencing, the district court may permit a defendant to withdraw his guilty plea if he shows a "fair and just reason" for withdrawal. See Fed. R. Crim. P. 32(e). The district court denied Jackson's withdrawal motion, finding that none of the six factors to be considered weighed in favor of allowing withdrawal of the guilty plea. The factors are: (1) evidence that the plea was not knowing and voluntary; (2) a credible assertion of innocence; (3) the length of time between entry of the plea and the motion to withdraw; (4) whether the defendant has had the assistance of competent counsel; (5) whether withdrawal will prejudice the government; or (6) prejudice the court. See United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991).

On appeal, Jackson argues first that his plea was not voluntary because the cooperation provision of his plea agreement was not disclosed to the district court. This argument fails for several reasons. When Jackson pled guilty to the drug charges, the government volunteered that it had agreed to withdraw the § 851 notice previously filed, but Jackson informed the district court that he did not have a plea agreement. Jackson cannot now claim a violation of Fed. R. Crim. P. 11(e)(2), which requires disclosure of a plea agreement. Moreover, the district court informed Jackson that, if he was attempting to cooperate with the government, the government would have full discretion to decide whether to move for a substantial assistance departure.

_____

*U.S. Sentencing Guidelines Manual (1995).

3

Second, Jackson contends that the government breached the supposed plea agreement by not debriefing him before sentencing and that this constituted a fair and just reason for withdrawing his plea. Because this argument was not made in the district court, we review it for plain error only. See United States v. Olano, 507 U.S. 725, 732-35 (1993) (appeals court may correct forfeited error if it is obvious, defendant has shown that it affected his substantial rights, and it seriously affects fairness, integrity, or public reputation of judicial proceedings). Jackson relies on United States v. Beltran-Ortiz, 91 F.3d 665 (4th Cir. 1996), and United States v. Ringling, 988 F.2d 504 (4th Cir. 1993), both cases in which the defendant had a formal plea agreement. In Beltran-Ortiz, the government's subsequent failure to debrief the defendant, as promised in the plea agreement, prejudiced his efforts to qualify for a sentence under USSG§ 5C1.2, the safety valve provision. In Ringling, the government could not keep its promise to inform the district court of the nature of the defendant's cooperation because it failed to debrief him before sentencing. In Jackson's case, by contrast, there was no written plea agreement and, even if Jackson relied on a government promise to debrief him, his failure to appear for sentencing was a breach his own implied promise to appear for sentencing which relieved the government of any obligation it had undertaken. See United States v. David, 58 F.3d 113, 115 (4th Cir. 1995).

Next, Jackson claims that the district court abused its discretion when it denied his motion for an expert witness to examine the drugs seized from his co-defendant. See United States v. Nichols, 21 F.3d 1016, 1017 (4th Cir. 1994). At sentencing, the government's expert witness, a chemist, testified that she had determined that the substance was cocaine base and that "crack" was simply the common name for cocaine base. However, she could not say whether the substance in its original form was lumpy or rock-like. Jackson asked to have the substance retested, arguing that the government had failed to prove that the substance seized was crack. The district court decided that, because Jackson had produced no evidence that the substance was another form of cocaine base, further testing was unnecessary.

Jackson contends on appeal that further testing might have shown that the substance was not crack within the meaning of the guideline, i.e., "a form of cocaine base, usually prepared by processing cocaine

4

hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rock-like form." USSG § 2D1.1(c) Note D. He relies on United States v. James, 78 F.3d 851 (3d Cir. 1996), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3259 (U.S. Oct. 7, 1996) (No. 95-9224), and United States v. Munoz-Realpe, 21 F.3d 375 (11th Cir. 1994), two cases in which there was some uncertainty about whether the substance in question was actually crack. The record here reveals no such ambiguity. At the Rule 11 hearing Jackson said he understood that he was subject to a ten-year mandatory minimum sentence if the amount of "crack" involved in his offense was more than fifty grams. We therefore find that the district court did not abuse its discretion when it dispensed with further testing. In his pro se supplemental brief, Jackson contends that the government failed to prove that the substance was crack. We are satisfied that the district court did not clearly err in finding, by a preponderance of the evidence, that the substance was crack. The government produced evidence that it was crack and Jackson produced no evidence to the contrary.

The probation officer recommended that Jackson receive an adjustment for obstruction of justice based on his failure to appear at sentencing, see USSG § 2J1.6, comment. (n.3), as well as an adjustment for reckless endangerment based on his reckless driving through a residential area during the high-speed chase before his arrest. See USSG § 3C1.2. In his objections to the presentence report, Jackson denied nearly striking a woman and child during the high-speed chase and denied obstructing justice by failing to appear. He made no argument at sentencing and the district court overruled his objections, incorrectly stating that Jackson had obstructed justice by his reckless driving. Jackson now contends that this amounted to double counting.

An adjustment for reckless endangerment is not given when the defendant's offense level has been increased by an equal or greater amount under another guideline for the same conduct. see USSG § 3C1.2, comment. (n.1). In Jackson's case, the adjustments were not based on the same conduct despite the district court's misstatement. Therefore, we find no error in the application of the guidelines.

Next, Jackson argues that the district court failed to make an adequate finding of fact to resolve the disputed reckless endangerment issue. The presentence report contained a description of the high-

5

speed chase. In response to Jackson's objection, the probation officer reported that the information came from the Deputy U.S. Marshals who were involved in the chase. At sentencing, Jackson produced no contrary evidence and made no argument. He thereby failed to meet his burden of showing that the information in the presentence report was inaccurate. See United States v. Terry, 916 F.2d 157, 162 (4th Cir. 1990). Without such an affirmative showing, the district court was free to resolve the issue by adopting the recommended findings in the presentence report. Id.; see also United States v. McManus, 23 F.3d 878, 887 (4th Cir. 1994).

Jackson also contests the district court's refusal to grant him an adjustment for acceptance of responsibility. The adjustment generally is not intended for a defendant who has engaged in conduct which results in an adjustment for obstruction of justice. See USSG § 3E1.1, comment. (n.4). In an extraordinary case, a defendant who has received an adjustment for obstruction of justice may also receive an adjustment for acceptance of responsibility. Id. However, Jackson made no effort to show that his was an extraordinary case, nor does the record demonstrate that it was. Consequently, we find no clear error.

Finally, Jackson contests the district court's decision to require him to reimburse the government for attorney's fees paid to his court-appointed counsel as a condition of supervised release. He objects (1) that no funds were available for reimbursement, (2) that the court lacked authority to order repayment as a condition of supervised release, and (3) that the court erred in delegating the schedule for repayment to the Bureau of Prisons and the Probation Office.

Under 18 U.S.C. § 3006A(f) (1994), the court must "[find] that funds are available for payment from or on behalf of a person furnished representation" before it orders repayment. The district court need not make an explicit finding on the record that the defendant has the ability to pay. The appeals court may uphold reimbursement orders without a specific finding on the availability of funds if there is sufficient evidence in the record to support the court's decision and the defendant did not object to that evidence. See United States v. Behnezhad, 907 F.2d 896, 900 (9th Cir. 1990); United States v. Gurtunca, 836 F.2d 283, 288 (7th Cir. 1987). Here, the evidence is

6

minimally adequate to indicate that Jackson could repay the costs of his representation during his period of supervised release. Although he had little work experience, Jackson had completed the tenth grade and was currently taking classes toward a GED. Moreover, in his plea agreement, Jackson promised to reimburse the United States for the cost of court-appointed counsel and agreed that the judgment order should include such reimbursement. These facts sufficiently support the finding required by § 3006A(f).

The district court had authority to make reimbursement a condition of supervised release under 18 U.S.C. § 3583(d) (1994), which states that a district court may impose conditions on supervised release if they are reasonably related to the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D) (1994). Subsection (a)(2)(B) lists "deterrence to criminal conduct" as an appropriate factor for consideration. Requiring a defendant to reimburse the government for the cost of his court-appointed attorney may deter him from committing another crime. Because reimbursement is reasonably related to the goal of deterrence, the district court had the authority to impose it as a condition of Jackson's supervised release.

The district court ordered the reimbursement to be payable in full immediately on a schedule established by the Bureau of Prisons under the Inmate Financial Responsibility Program and, if repayment is still in progress when his supervised release commences, on a schedule established by the Probation Office. Jackson maintains that the court erred in delegating its responsibility to determine the amount and timing of his repayment. See United States v. Johnson, 48 F.3d 806, 809 (4th Cir. 1995) (holding that sentencing court may not delegate decisions concerning amount and timing of restitution payments). Jackson failed to object to the order in the district court; therefore, we review it for plain error. See Olano, 507 U.S. at 732-35. Under a plain error analysis, we find that, even if the district court erred in delegating the responsibility for determining a repayment schedule to the Bureau of Prisons and the Probation Office, the error did not affect Jackson's substantial rights. While an error affecting a defendant's substantial rights may not always be an error which prejudices him, generally it is the kind of error which requires correction. See Olano, 507 U.S. at 735 (speculating that there may be a special category of forfeited errors that can be corrected regardless of their affect on the outcome).

7

The defendant has the burden of demonstrating prejudice on appeal. See id. at 734; Fed. R. Crim. P. 52(b). Jackson has not shown that the order has prejudiced him. If he has difficulty meeting the scheduled payments while on supervised release, he can petition the district court for modification of the terms of his supervised release. See § 3583(e)(2) (1994) and Fed. R. Crim. P. 32.1(b). And, if the government should seek to revoke his supervised release for non-payment, he could assert lack of funds as a defense. See Gurtunca, 836 F.2d at 289. In sum, because the alleged error does not affect Jackson's substantial rights, we conclude that it does not constitute plain error.

Therefore, we affirm the order denying Jackson's motion to withdraw his guilty plea and affirm the sentence. We grant Jackson's request to file a pro se supplemental brief. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

8