**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 29 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

LANCE WADE GREATHOUSE,

    Defendant-Appellant.

No. 99-3400

(D.C. No. 99-CR-40043-01)

(D.Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **EBEL** and **BRISCOE,** Circuit Judges, and **COOK**, District Judge.[**]

---

Appellant-defendant Lance Wade Greathouse appeals his December 6, 1999, sentencing on a federal drug charge. He argues the district court erred in deriving his base offense level from the total weight of a methamphetamine mixture rather than from the amount of actual methamphetamine found in his possession. Greathouse also argues the district court erred in denying his request at the sentencing hearing for a court-appointed expert to challenge the weight of the methamphetamine used to calculate his base offense level.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable H. Dale Cook, Senior United States District Judge for the Northern, Eastern and Western Districts of Oklahoma, sitting by designation.

Greathouse's first argument fails under the clear language of the Sentencing Guidelines. His second argument fails because Greathouse's request for the services of an expert witness was not timely, and even if timely, Greathouse failed to offer any evidence to suggest that additional expert testimony would be helpful or necessary. We affirm.

## Background

On August 30, 1999, Greathouse pleaded guilty to count one of a three count indictment. Count one of the indictment alleged that on January 12, 1999, defendant attempted to manufacture methamphetamine or a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 846, in reference to § 841(a)(1). In his plea agreement Greathouse stipulated to the grand jury testimony of the case agent and that relevant conduct would be based on all three counts.

This charge stems from an arrest on January 12, 1999, following a traffic stop in which the arresting officer observed a vehicle driven by Greathouse swerve outside the traffic lane and further observed a cooler being thrown from the vehicle. Inside the cooler, was a large quantity of vapors and fumes and a mason jar containing a cloudy liquid. The federal Drug Enforcement Administration (DEA) was notified and responded. The DEA and the Kansas Bureau of Investigation (KBI) Labs tested the contents and found .75 grams of actual methamphetamine. Detectable traces of ephedrine, pseudoephedrine, and ethyl ether were present. By-products unique to the manufacturing process of methamphetamine, ammonia and a light petroleum distillate, were also detected. The total weight of the mixture or substance was 391.20 grams. Greathouse was arrested, booked and released on bond.

On February 15, 1999, Greathouse and another individual were arrested during a traffic

stop after officers were advised by a clerk at a gasoline station that these individuals had purchased five cans of starter fluid. The driver refused to allow officers to search the vehicle. Greathouse and the driver were arrested on other charges and the vehicle was impounded. In searching the trunk of the vehicle, in addition to the starter fluid, officers recovered an industrial-type fire extinguisher, a drop cloth with unknown residue, one-half bottle of citronella torch fluid, and an orange cap wrapped around a mason jar. Greathouse bonded out of jail and no charges were filed.

On February 22, 1999, an off-duty patrol officer observed Greathouse throw items from his moving vehicle. The officer stopped the vehicle and returned to the location where Greathouse had thrown out the items. One of the items was a thermos with detectable traces of anhydrous ammonia. The officer detected the smell of ether-based chemicals on Greathouse's clothing.

On March 30, 1999, a motel room rented by Greathouse was searched by officers. Two quart jars were found, tested, and determined to contain 690 grams of a mixture or substance containing methamphetamine. Subsequently, Greathouse was stopped for a traffic violation and the officers recovered more drug paraphernalia in his vehicle.

Greathouse was indicted and charged in federal court with three counts of attempt to manufacture methamphetamine or a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and § 846 relating to his arrests on January 12, 1999, February 22, 1999, and March 29, 1999.

Following plea negotiations, Greathouse pleaded guilty to count one of the indictment. A presentence report was prepared. The presentence report applied U.S.S.G. § 2D1.1, Note to Drug

Quantity Table (B), which states:

> In the case of a mixture or substance containing PCP or methamphetamine, use the offense level determined by the entire weight of a mixture or substance, or the offense level determined by the weight of the PCP (actual) or methamphetamine (actual), whichever is greater.

The probation officer attributed 391.20 grams of a mixture or substance containing methamphetamine to Greathouse as to count one. As relevant conduct, the probation officer attributed 690 grams of a mixture or substance containing methamphetamine as to count three.

Greathouse made several objections to the presentence report. Relevant here is his objection to the calculation under count one of an offense level based on a mixture or substance rather than the actual methamphetamine in his possession. At the sentencing hearing, defense counsel requested the district court to continue the sentencing in order for an appointment of an expert witness to challenge the amount and quantity of the methamphetamine involved in count one.

The district court asked the defendant why he was requesting the services of an expert witness. Greathouse indicated that he did not believe it was fair to attribute to him the full weight of methamphetamine mixture rather than the amount of actual methamphetamine contained in the jar. Greathouse is asserting error in the district court's denial of his request for appointment of an expert to determine the actual weight of the methamphetamine in his possession.

The district court placed Greathouse's base offense level at 29, after adjustment for acceptance of responsibility, with a criminal history category of 5. The district court found the amount of the mixture or substance containing methamphetamine attributable to Greathouse to

be one kilogram, based on 391 grams of mixture under count one and 690 grams under count three. The district court found that the mixture or substance was greater than the .75 grams of actual methamphetamine in the defendant's possession and applied U.S.S.G. 2D1.1. The district court denied defendant's request for an expert and noted that the amount was not speculative, because it had been documented by the DEA and KBI forensics laboratories. Greathouse was sentenced to 140 months imprisonment followed by a four year term of supervised release.

**Discussion**

I.     **Calculating Drug Quantity**

We review the district court's factual findings for clear error and review its legal interpretation of the Sentencing Guidelines *de novo*. See United States v. Norman, 129 F.3d 1393, 1398 (10th Cir. 1997).

Greathouse argues in the case of methamphetamine and PCP, both the guidelines and the minimum mandatory provisions of Title 21 require the sentencing court to employ the weight only of the percentage of the mixture that is pure methamphetamine, citing U.S.S.G. § 2 D1.1. Greathouse misinterprets the plain language of the statutory scheme and the Sentencing Guidelines.

Title 21 U.S.C. § 841 (b) establishes penalties for possession with intent to distribute methamphetamine based either on the weight of "a mixture or substance containing a detectable amount of methamphetamine" or on lower weights of pure methamphetamine. See 21 U.S.C. §§ 841(b)(1)(A)(viii) and (b)(1)(B)(viii). Within the Sentencing Guidelines, the base offense level is calculated from the Drug Quantity Table found in § 2D1.1 (c). The Note to Drug Quantity Table (A) provides:

Unless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance. If a mixture or substance contains more than one controlled substance, the weight of the entire mixture or substance is assigned to the controlled substance that results in the greater offense level.

The district court followed the plain command of U.S.S.G. § 2D1.1(c). This language directs the district court to use whichever drug quantity calculation results in the higher offense level. We find no error in the district court's use of the entire mixture or substance containing methamphetamine.

## II.    Appointment of an Expert Witness

We review the denial of the appointment of an expert for an abuse of discretion. United States v. Nichols, 21 F.3d 1016, 1017 (10th Cir. 1994).

Greathouse argues he was prejudiced by the district court's failure to hold an ex parte hearing on his request at the sentencing hearing for the appointment of an expert witness to determine the quantity of actual methamphetamine.

Under the Criminal Justice Act (CJA), on application by appointed counsel, and after an ex parte hearing, the court may allow the defense to engage the services of experts in various fields. See 18 U.S.C. § 3006A(e)(1). The use of an ex parte proceeding is to prevent the premature disclosure of defendant's case and to protect the defendant's right against self incrimination. See Marshall v. United States, 423 F.2d 1315, 1318 (10th Cir. 1970) (citing 2 U.S. Code Cong. & Ad. News, p. 2990 (1964)). Id. An ex parte proceeding is held at the request or for the benefit of one side, only, without notice to or contest by the opposing party. Marshall, 423 F.2d at 1318. A defendant may waive the services provided by not timely moving for a hearing under subsection (e). The record shows that the defendant did not file an application nor

make a timely request for an ex parte hearing. The defense requested the appointment of an expert at the time of sentencing and in the presence of the prosecutor. The absence of an ex parte proceeding was not error because the defendant waived it by failing to file an application to proceed ex parte and by making his request in open court in the presence of the prosecutor.

In his brief, Greathouse states that he requested the appointment of an expert to challenge the weight of the methamphetamine and to show that the actual weight of the methamphetamine was 2.2 grams. We have held that a defendant must provide the district court with explicit detail showing why expert services are "necessary" to an adequate defense and what the defendant expected to find by using the expert. See United States v. Gonzales, 150 F.3d 1246, 1251 (10th Cir. 1998). We find no abuse of discretion in the district court's denial of this request because Greathouse failed to show that the services were "necessary". Greathouse did not request an expert to challenge the amount of mixture or substance containing methamphetamine as determined by the district court. Because the weight of the mixture was greater, the district court applied the plain language of U.S.S.G. § 2D1.1 to determine the base offense level for the defendant's sentence. The appointment of an expert to determine the actual amount of methamphetamine was therefore unnecessary.

**AFFIRMED.**

Entered for the Court


H. Dale Cook
Senior U.S. District Court Judge

**No. 99-3400, United States v. Greathouse**

**BRISCOE, Circuit Judge, concurring:**

I concur in the result but write separately to express my concerns regarding whether Greathouse's guilty plea was knowing and voluntary, and whether he received effective assistance of counsel at the time of his guilty plea. During the sentencing proceeding, Greathouse, who objected to the drug quantity calculations set forth in the presentence report and ultimately relied on by the district court, repeatedly indicated that he had been misadvised by his attorney at the time of the guilty plea regarding the quantity of methamphetamine he was being charged with and the resulting maximum possible sentence he was facing. See ROA, Vol. II, at 3-4 ("I was told when I took this plea by my attorney that they [the government] had two and a half grams of meth. That's what I was going to be charged with. Then it goes from two and a half grams to 291 grams or something like that, and that's just -- that's not what I was told when I took this plea."), 6 ("I was told there was two and a half grams of methamphetamine, that's what I was being charged with. Then they're saying that they're going to charge me with the total weight of the jar. I don't understand it. It was never explained to me. I was told I was facing five years maximum until about a week ago or a week and a half ago"), 9 ("[M]y attorney never told me that I was getting charged with 291 grams. He told me I was getting charged with two and half grams of methamphetamine. He showed me on the sentencing guideline chart where I fell, five years max."). Because the district court did not construe these statements as a challenge to the validity of the guilty plea or as an

assertion of ineffective assistance, and because Greathouse has not asserted any such claims on appeal, there is no basis for pursuing these statements any further at this time. Greathouse may, however, be able to assert these claims in the context of a 28 U.S.C. § 2255 motion.