**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Buddy Lee GODDARD,
Defendant–Appellant.**

No. 90–8038.

United States Court of Appeals,
Tenth Circuit.

March 27, 1991.

David A. Kubichek, Asst. U.S. Atty. (Richard A. Stacy, U.S. Atty., with him on the brief), D. Wyoming, Casper, Wyo., for plaintiff-appellee.

Michael H. Reese, Wiederspahn, Lummis & Liepas, P.C., Cheyenne, Wyo., for defendant-appellant.

Before ANDERSON, EBEL, Circuit Judges, and SAFFELS,* District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

Buddy Lee Goddard pled guilty and was convicted of conspiracy to distribute co-caine and to possess it with intent to distribute, in violation of 21 U.S.C. § 846. He now appeals his sentence, contending that the district court improperly imposed a two-level increase on his sentence, pursuant to § 2D1.1(b)(1) of the Federal Sentencing Guidelines for his co-conspirator's possession of a firearm during the commission of a drug trafficking offense. We affirm the sentence.

## FACTUAL BACKGROUND

In April, 1989, the Wyoming Attorney General's Office intercepted several telephone calls between Buddy Goddard and Leslie Paulson, both in Riverton, Wyoming, and Roy Beeson in Phoenix, Arizona. These conversations indicated that Goddard and Paulson were negotiating the purchase of a pound of cocaine from Beeson for approximately $10,800. On April 27, Goddard and Paulson drove from Riverton, Wyoming to Phoenix, Arizona in Paulson's pickup truck to purchase the cocaine from Beeson at the Camelback Comfort Inn.

After leaving the site of the transaction, Paulson and Goddard decided they were being followed by "narcs." Paulson telephoned Roberta Mines in Wyoming and told her that Goddard would drive Paulson's truck back to Wyoming while he rented a car and drove to Las Vegas with the cocaine, presumably in order to elude the narcotics agents. Mines and Tim Mills then drove to Las Vegas to meet Paulson and the three of them started back to Wyoming with the cocaine. On May 2, Mines, Mills and Paulson were stopped and arrested by the Wyoming Highway Patrol near Rock Springs, Wyoming. One pound of cocaine was seized from their car.

Goddard, driving Paulson's truck, was stopped the same day, also near Rock Springs, several miles from the earlier arrest. During a consensual search of the truck, a .22 caliber handgun was discovered in Paulson's luggage in the truck bed.

* The Honorable Dale E. Saffels, Senior Judge, United States District Court for the District of Kansas, sitting by designation.

During Goddard's presentence interview with a probation officer, Goddard admitted that he knew Paulson possessed the gun during their trip to Arizona because, at one point, the two of them had argued and Paulson had brandished the gun at him. Goddard assumed that Paulson continued to possess the gun after the dispute, but he did not see it again until it was discovered during the search of the truck on May 2. At the sentencing hearing, Goddard's counsel conceded that Goddard knew Paulson possessed a gun. R. Vol. II at 7–8.

The Federal Probation Office prepared a Presentence Report on Goddard recommending a base offense level of 24, due to the amount of cocaine involved, and a two-level increase pursuant to § 2D1.1(b)(1) of the Sentencing Guidelines. Because of Paulson's gun, at the sentencing hearing, the district court adopted the recommendations of the probation officer, including the § 2D1.1(b)(1) two-level increase and sentenced Goddard to fifty-five months in prison.

We review the district court's factual findings under the clearly erroneous standard. 18 U.S.C.A. § 3742(e) (West Supp. 1990); *United States v. Harris*, 903 F.2d 770, 778 (10th Cir.1990). Thus, "we will not reverse the district court unless the court's finding was without factual support in the record, or if after reviewing all the evidence we are left with the definite and firm conviction that a mistake has been made." *United States v. Beaulieu*, 893 F.2d 1177, 1181–82 (10th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990). While giving due deference to the district court's application of the Sentencing Guidelines to the facts, we review contested issues of law and legal principles *de novo.* 18 U.S.C.A. § 3742(e); *United States v. Rutter*, 897 F.2d 1558, 1560 (10th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990); *United States v. Kirk*, 894 F.2d 1162, 1163 (10th Cir.1990).

## DISCUSSION

■ Section 2D1.1(b)(1) of the Sentencing Guidelines provides for a two-level enhancement if a "dangerous weapon (including a firearm) was possessed during the commission of the offense." The enumerated offenses include unlawful manufacturing, importing, exporting or trafficking in drugs or possession with intent to commit the listed offenses. U.S.S.G. § 2D1.1. To justify consideration of Paulson's gun possession in enhancing Goddard's sentence, the district court relied on § 1B1.3 (Relevant Conduct). That section provides that enhancement may be based on the "conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." Commentary, Application Note 1, U.S.S.G. § 1B1.3. The court determined that Goddard knew Paulson possessed the gun, thereby satisfying the reasonable foreseeability test, and, accordingly, held Goddard accountable for that possession. Then, under § 2D1.1, the judge enhanced Goddard's sentence by two-levels.

This approach is entirely proper. *United States v. Garcia*, 909 F.2d 1346, 1349 (9th Cir.1990). However, the district court did not need to rely on § 1B1.3 to enhance Goddard's sentence. Rather, on the facts in this case, § 2D1.1 directly allows the enhancement. The Commentary to § 2D1.1 makes clear that the firearm enhancement applies not only to the enumerated substantive drug offenses, but also to conspiracy to commit any offense involving a controlled substance. Commentary, Application Note 3, U.S.S.G. § 2D1.1; U.S.S.G. § 2D1.4. Thus, in a drug conspiracy conviction, "the [§ 2D1.1(b)(1)] adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the [conspiracy] offense." Commentary, Application Note 3, U.S.S.G. § 2D1.1.[1]

The weapon was admittedly present during the conspiracy. In furtherance of the

---

1. The Commentaries interpret the Guidelines and explain their application. Failure to follow the Commentary may constitute an incorrect application of the Guidelines reversible on appeal. U.S.S.G. § 1B1.7; *United States v. Smith*, 900 F.2d 1442, 1447 (10th Cir.1990); *United States v. Restrepo*, 884 F.2d 1294, 1296 (9th Cir.1989).

conspiracy, Goddard and Paulson drove to Arizona to buy the cocaine. Paulson possessed the gun throughout the trip and Goddard knew it. Since it is not "clearly improbable" that the gun was connected to the conspiracy, the enhancement was appropriate.

■ Goddard argues that because he was unaware that the gun was in Paulson's luggage at the time of his arrest, he did not "possess" the gun within the meaning of § 2D1.1(b)(1). He contends that his "unwitting" possession of a firearm should not authorize a two-level increase, citing *United States v. Burke*, 888 F.2d 862 (D.C.Cir. 1989). However, Goddard's sentence has not been increased because of his own intentional possession of the gun, but because of his knowing and voluntary complicity with the possessor of the gun where he knew the gun was present and it was connected to the conspiracy.

■ Goddard next contends that even if Paulson possessed the gun during the trip, the district court's determination that "the weapon was connected with the offense" cannot be justified for two reasons. First, he argues that the gun and drugs were discovered several miles apart and thus Paulson's possession of the gun during the crime cannot be established. In reaching this conclusion, Goddard relies on *United States v. Vasquez*, 874 F.2d 250 (5th Cir. 1989), in which the court held that there was an insufficient connection between the gun and the drug offense where a gun was found in defendant's apartment and the drugs were purchased at a parking lot far from his home and no drugs were found in his apartment. However, Vasquez was convicted of possession of cocaine with intent to distribute, not conspiracy. The Fifth Circuit acknowledged that "[i]f defendant had been convicted on the related conspiracy count ... our decision might be different" since the district court had found that the defendant had made phone calls from his home and stored drug paraphernalia and cash there in furtherance of

the conspiracy. *United States v. Vasquez*, 874 F.2d at 251.

■ Goddard then argues that there must be more than a mere connection between the gun and the offense to justify the enhancement. He claims that the gun must have been an "integral part of the transaction and that there must be an act to manifest an ability on Defendant's part that he/she will use such a weapon." Appellant's Brief at 10. For this argument, Goddard relies on the standard for convictions under 18 U.S.C. § 924(c).[2] *See United States v. Cardenas*, 864 F.2d 1528, 1533–35 (10th Cir.1988), *cert. denied*, 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989); *United States v. Meggett*, 875 F.2d 24, 29 (2d Cir.1989). This standard, however, is much higher than that necessary for enhancement under the Guidelines. *United States v. Hewin*, 877 F.2d 3, 5 (5th Cir.1989); *United States v. Aguilera–Zapata*, 901 F.2d 1209, 1214 (5th Cir.1990). As mentioned above, the Guidelines require only that a preponderance of the evidence support a finding that the circumstances surrounding the gun's presence do not make it "clearly improbable" that the gun was connected to the offense. Commentary, Application Note 3, U.S.S.G. § 2D1.1; *see United States v. Burke*, 888 F.2d at 869 (possession of inoperable gun justified enhancement); *United States v. Weidner*, 703 F.Supp. 1350, 1353 (N.D.Ind.1988), *aff'd*, 885 F.2d 873 (7th Cir.1989) (enhancement properly applied even though gun trap was not activated); *see also United States v. Restrepo*, 884 F.2d 1294, 1296 (9th Cir.1989) (possession alone is sufficient to properly apply enhancement).

Goddard urges us to consider several other arguments, all of which we find unpersuasive. He argues that his admission at the presentence interview regarding Paulson's possession of the gun was insufficient to justify the two-level enhancement. However, he overlooks the fact that other evidence supported the court's determination, including Goddard's plea of

**2.** A conviction under 18 U.S.C. § 924(c) for using or carrying a firearm during or in relation to a drug trafficking offense adds a mandatory five year term of imprisonment to run consecutively to the sentence imposed for the underlying drug offense.

guilty to conspiracy, the discovery of the gun in the truck he was driving and his counsel's admission at the sentencing hearing that Goddard knew Paulson possessed the gun. Viewing the evidence as a whole, we are unpersuaded that the presence of the gun and its connection to the conspiracy is without sufficient factual support in the record.

Finally, Goddard contends that his sentence denied him due process. He argues that he was sentenced "on the basis of misinformation of a constitutional magnitude," *United States v. Beaulieu*, 893 F.2d at 1181, i.e., "inferences" of possessing a gun during the commission of an offense based on Paulson's brandishing of the gun at Goddard. Once again, the enhancement is based on Goddard's complicity with Paulson and the gun's connection with the conspiracy, not on an "inference" that Goddard possessed the weapon.

■ Goddard also claims that selective application of § 2D1.1 to himself and not to the other co-defendants [3] is fundamentally unfair and violates his due process rights. While similar offenders engaged in similar conduct should be sentenced equivalently, *United States v. Jackson*, 921 F.2d 985, 988 (10th Cir.1990), disparate sentences are allowed where the disparity is explicable by the facts on the record. *United States v. Sardin*, 921 F.2d 1064, 1067 (10th Cir. 1990). In this case, the court's failure to apply the firearm enhancement to the other co-conspirators is justified on the record. The co-conspirators were not as actively involved in the conspiracy as Goddard, particularly in the drive to Arizona during which the gun was actually present. In addition, Goddard was apparently the only participant, except for Paulson, with actual knowledge of the gun. *Cf. United States v. Williams*, 894 F.2d 208, 211–13 (6th Cir. 1990). Thus, the court's decision to apply the enhancement to Goddard is adequately justified by the record and is not an abuse of discretion. *See United States v. Jackson*, 921 F.2d at 989.

**3.** The other co-defendants already sentenced at the time of Goddard's sentencing are Tim Mills

We have thoroughly reviewed all of Goddard's claims, and for the reasons discussed above, we AFFIRM the district court's sentence.