**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 20 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Respondent-Appellee,

v.

PETER J. McMAHON, JR.,

Petitioner-Appellant.

No. 04-5011

Northern District of Oklahoma

(D.C. No. 97-CV-1058-H)

---

**ORDER** [*]

---

Before **EBEL**, **MURPHY**, and **McCONNELL**, Circuit Judges.

---

Peter J. McMahon, a federal prisoner, seeks a certificate of appealability

(COA) that would allow him to appeal from the district court's order denying his

habeas corpus petition under 28 U.S.C. § 2255.      *See* 28 U.S.C. § 2253(c)(1)(B).

Because we conclude that Mr. McMahon has failed to make "a substantial

showing of the denial of a constitutional right," we deny his request for a COA

and dismiss this appeal.  28 U.S.C. § 2253(c)(2).

---

[*]This order is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel.

## I.

In early 1995, Mr. McMahon, and his co-defendant Kandy Thomas, were indicted in the Northern District of Oklahoma and charged with possessing a firearm and ammunition in violation of 18 U.S.C. § 922(g) and using a firearm "during and in relation to any . . . drug trafficking crime" in violation of 18 U.S.C. § 924(c)(1). Ms. Thomas pled guilty during their trial after the Government discovered she and Mr. McMahon had suborned perjury; Mr. McMahon was found guilty by jury. The district court enhanced Mr. McMahon's sentence under 18 U.S.C. § 924(e), the Armed Career Criminal Act ("ACCA"), and sentenced him to 235 months for his § 922(g) convictions, to be served consecutively with a 60-month sentence for his § 924(c)(1) conviction.

On direct appeal, this Court reversed Mr. McMahon's § 924(c)(1) conviction based on the Supreme Court's holding in *Bailey v. United States*, 516 U.S. 137 (1995), that a § 924(c) conviction requires "active employment" of the weapon "in relation to the predicate crime." *United States v. McMahon*, 91 F.3d 1394, 1396 (10th Cir. 1996), quoting *Bailey*, 516 U.S. at 143. We vacated the portion of Mr. McMahon's sentence based on his § 924(c)(1) conviction, affirmed the enhancement of the sentence on his § 922(g) convictions, and remanded the case for resentencing. 91 F.3d at 1396–98.

On remand, the district court again sentenced Mr. McMahon to 235 months for his § 922(g) convictions; as before, the court enhanced the sentence under § 924(e). Mr. McMahon appealed his new sentence, and we affirmed. *United States v. McMahon*, 182 F.3d 934, 1999 WL 363040 (10th Cir. June 7, 1999) (unpublished decision).

Mr. McMahon then filed a habeas corpus petition under 28 U.S.C. § 2255. The district judge referred the matter to a magistrate judge, who, in a forty-three page Report and Recommendation, recommended the district court deny Mr. McMahon's § 2255 petition. After considering Mr. McMahon's objections, the district court adopted the magistrate judge's report and recommendation. This appeal followed.

## II.

Mr. McMahon posits four reasons why we should issue a COA. Exercising jurisdiction under 28 U.S.C. §§ 2253(a) and 2255, we consider each.

## A.

Mr. McMahon first argues the district court erred by considering his 1986 state conviction for Unlawful Delivery of Controlled Drug a qualifying predicate felony under § 924(e), which requires a district court to enhance a defendant's sentence for a § 922(g) conviction if that defendant "has three previous convictions . . . for a violent felony or a serious drug offense, or both." 18 U.S.C.

§ 924(e)(1). Mr. McMahon claims his 1986 conviction was unconstitutionally obtained—either because he is actually innocent or because of ineffective assistance of counsel—and that it thus should not qualify as a predicate "serious drug offense."

Mr. McMahon's argument is a collateral attack on a prior state conviction that later was used to enhance his federal sentence. In *Daniels v. United States*, 532 U.S. 374 (2001), the Supreme Court limited a prisoner's ability to collaterally attack a prior state conviction in a § 2255 proceeding:

> If . . . a prior conviction used to enhance a federal sentence is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), then that defendant is without recourse. The presumption of validity that attached to the prior conviction at the time of sentencing is conclusive, and the defendant may not collaterally attack his prior conviction through a motion under § 2255.

*Id.* at 382. The only exceptions are claims that a prior conviction was obtained without the assistance of appointed counsel in violation of the Sixth Amendment and *Gideon v. Wainwright*, 372 U.S. 335 (1963), or "rare cases in which no channel of review was actually available to a defendant with respect to a prior conviction, due to no fault of his own." *Daniels*, 532 U.S. at 382–83.

*Daniels* did not discuss what type of non-*Gideon* "rare cases" would permit a prisoner to collaterally attack a prior conviction in a § 2255 motion once the standard opportunities for review expired. Mr. McMahon, however, claims that

-4-

*Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394 (2001)—where the Court extended *Daniels*'s holding to § 2254 petitions—provides guidance. *Coss* states that a defendant may not be "faulted for failing to obtain timely review of a constitutional claim" if "a state court . . . , without justification, refuse[s] to rule on a constitutional claim that has been properly presented to it," or if, "after the time for direct or collateral review has expired, a defendant . . . obtain[s] compelling evidence that he is actually innocent of the crime for which he was convicted, and which he could not have uncovered in a timely manner." 532 U.S. at 405.

These statements are not *Coss*'s holding, but rather helpful dicta. *See id.* at 406 ("As in *Daniels*, this case does not require us to determine whether, or under what precise circumstances, a petitioner might be able to use a § 2254 [or § 2255] petition in this manner."). We nonetheless assume these examples typify the "rare cases" that would qualify as exceptions to the rule in *Daniels* and measure Mr. McMahon's claims against them.

First, Mr. McMahon claims that "he is actually innocent of the predicate 1986 state conviction." Aplt.Br. 14. He claims that, despite his innocence, he pled guilty—on counsel's advice—to the 1986 charges because he had been assaulted while in prison for a separate crime and the plea bargain "would allow him to be sentenced to a term of imprisonment to be served concurrently with his"

earlier sentence and "almost immediately discharge the imprisonment portion of his [new] sentence." *Id.* at 11. Thus, Mr. McMahon, though allegedly innocent, pled guilty because he feared "for his safety within a prison system which had failed to protect him from a life threatening assault." *Id.*

Even assuming these facts are true, this claim does not qualify as a "rare case" exception. Based on *Coss*, a prior state conviction is subject to collateral attack only if " *after* the time for direct or collateral review has expired, a defendant . . . obtain[ed] compelling evidence" of actual innocence that " *he could not have uncovered in a timely manner* ." 532 U.S. at 405 (emphasis added). According to Mr. McMahon's story, he knew *immediately* following his guilty plea—well before his chance to seek direct review in Oklahoma courts expired—that he was actually innocent. A timely appeal could have addressed his actual innocence claim. Because he failed to appeal this issue in Oklahoma, Mr. McMahon foreclosed his chance to seek review in a § 2255 proceeding, and he "is not entitled to another bite at the apple simply because that conviction is later used to enhance another sentence." *Daniels* , 532 U.S. at 383.

Additionally, Mr. McMahon argues we should permit this collateral attack on his 1986 conviction because the public defender who represented him in 1986 provided ineffective assistance of counsel. He claims he "was denied the opportunity to challenge his 1986 conviction through no fault of his own"

because, after he accepted the plea agreement, "McMahon was abandoned by his counsel. The court had not advised McMahon of his appellate rights, and McMahon's trial counsel never met with him to advise him of his right to challenge the conviction on appeal." Aplt.Br. 15.

Mr. McMahon asserts that we should consider this ineffective assistance collateral challenge to his 1986 conviction under the "rare case" exception in *Daniels*. However, *Daniels* and *Coss* both considered ineffective assistance of counsel claims, and neither held—though both were squarely confronted with the issue—that an ineffective assistance claim was a "rare case." *Daniels*, 532 U.S. at 384 ("No such claim [of a rare case] is made here. The sole basis on which petitioner Daniels challenges his current federal sentence is that two of his prior state convictions were the products of inadequate guilty pleas and ineffective assistance of counsel."); *Coss*, 532 U.S. at 399 ("In his [§ 2254] petition, Coss contended that his 1986 assault conviction was the product of ineffective assistance of counsel."). Accordingly, if his ineffective assistance claim is excepted from *Daniels*'s rule prohibiting collateral attacks, it must be as an extension of *Gideon*.

It is well established that "[a]n indigent defendant in a criminal trial has the constitutional right to the assistance of counsel." *Baker v. Kaiser*, 929 F.2d 1495, 1498 (10th Cir. 1991), citing *Gideon v. Wainwright*, 372 U.S. 335 (1963). "The

-7-

right to counsel also extends to a defendant's first appeal as of right." *Id.*, citing *Douglas v. California*, 372 U.S. 353 (1963). Appointed counsel, both at trial and on the first appeal as of right, must render effective assistance. *See McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970); *Evitts v. Lucey*, 469 U.S. 387 (1985). In *Baker,* the Court concluded "that the right to counsel applies to the period between the conclusion of trial proceedings and the date by which a defendant must perfect an appeal." 929 F.2d at 1498–99. The Court found this right "is 'required in the hiatus between the termination of trial and the beginning of an appeal in order that a defendant know that he has the right to appeal, how to initiate an appeal and whether, in the opinion of counsel, an appeal is indicated.'" *Id.* at 1499, quoting *Nelson v. Peyton*, 415 F.2d 1154, 1157 (4th Cir. 1969).

Mr. McMahon asserts that, based on *Gideon*, *Douglas*, *Evitts*, and *Baker*, he was denied effective assistance of counsel because his appointed attorney never spoke to him about appealing his 1986 conviction. We disagree. *Baker* only speaks to a counsel's duties following a jury trial and conviction. When a defendant pleads guilty, "an attorney has no absolute duty in every case to advise a defendant of his limited right to appeal." *Laycock v. State of New Mexico*, 880 F.2d 1184, 1887-88 (10th Cir. 1989). Mr. McMahon cannot succeed on an ineffective assistance claim solely by showing that his attorney failed to notify him of his limited appeal rights. *Id*. at 1889. Instead, Mr. McMahon must

demonstrate that his counsel failed to inform him of his appeal rights after he inquired about them or that there was a constitutional error that might have resulted in a court setting aside his guilty plea. *Id*. Mr. McMahon claims only that his "trial counsel failed to consult with him about his right to appeal," Aplt.Br. 11, that he was "abandoned by his counsel," *id.* at 15, and that his "trial counsel never met with him to advise him of his right to challenge the conviction on appeal." *Id.* He does not claim that he asked his counsel about his right to appeal, nor does he allege that a court would have set aside his guilty plea because it was constitutionally infirm. Thus, Mr. McMahon was not denied the right to counsel. This claim therefore does not qualify as a *Gideon* exception to *Daniels*.

In sum, *Daniels* prevents Mr. McMahon from collaterally challenging his 1986 Oklahoma conviction in a § 2255 motion. Once a prisoner's time for directly attacking a prior state conviction has expired, as Mr. McMahon's has for his 1986 conviction, the prisoner may collaterally attack such a conviction in a § 2255 proceeding only if he was unrepresented in violation of *Gideon* when convicted or in other "rare cases." *Daniels*, 532 U.S. at 382–84. Mr. McMahon's claims do not qualify under *Daniels*'s exceptions. Accordingly, "[t]he presumption of validity that attached to [Mr. McMahon's] prior conviction at the time of sentencing is conclusive," *id.* at 382, and the district court did not err by

considering Mr. McMahon's 1986 conviction as a qualifying predicate felony for ACCA sentence enhancement purposes.

B.

Mr. McMahon next contends he is entitled to a COA because the Government sought a downward departure for substantial assistance for Ms. Thomas, but not for him, after they both testified at Mr. Michael Sinclair's perjury trial. We disagree.

Mr. McMahon and Ms. Thomas were each charged with violating 18 U.S.C. § 922(g) after police found a shotgun in their bedroom closet. During their trial, they presented the testimony of Mr. Sinclair, who testified that neither defendant placed the gun in their closet, but that it belonged to, and was placed in their closet by, Ms. Thomas's former husband. Later that evening, the Government discovered Mr. Sinclair's testimony was false and that Mr. McMahon and Ms. Thomas had suborned it.

After Mr. McMahon's trial concluded, the Government charged Mr. Sinclair with perjury. Mr. McMahon and Ms. Thomas were two of the Government's key witnesses in Mr. Sinclair's trial. Thereafter, the Government filed a substantial assistance downward departure motion for Ms. Thomas but not for Mr. McMahon. Mr. McMahon asserts that he is entitled to habeas relief because the "record affords no rational reason for the disparity." Aplt.Br. 20.

It is not entirely clear whether Mr. McMahon seeks habeas relief because of the disparity between his sentence and Ms. Thomas's sentence or because the Government moved for a downward departure for Ms. Thomas but not for him. *Compare id.* at 18 ("The disparity between McMahon's sentence and the sentence of his co-defendant warrants relief.") *with id.* at 24 ("The issue is not acceptance of responsibility, but substantial assistance to the Government."). In the end, however, this distinction makes little difference: the result is the same in either circumstance.

When sentencing a defendant, a district court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). "However, the purpose of the guidelines is to 'eliminate unwarranted disparities [in sentencing] nationwide,' not to eliminate disparity between co-defendants." *United States v. Gallegos*, 129 F.3d 1140, 1143 (10th Cir. 1997), quoting *United States v. Garza*, 1 F.3d 1098, 1100 (10th Cir. 1993) (brackets in original). Thus, "'the mere fact of a difference between the applicable guideline range for a defendant [and] that of his co-defendant would [not] permit a departure, either because the difference was too large or too small.'" *Id.*, quoting *Garza*, 1 F.3d at 1100. We permit disparate sentences "'where the disparity is explicable by the facts on the record.'" *Garza*, 1 F.3d at 1101, quoting *United States v. Goddard*,

929 F.2d 546, 550 (10th Cir. 1991).

Here, the record adequately explains the disparate sentences. While Ms. Thomas pleaded guilty to one count of violating 18 U.S.C. § 922(g), Mr. McMahon was found guilty by jury trial of two counts of the same offense. That Mr. McMahon was found guilty of more offenses than Ms. Thomas is one explanation for the difference in "the applicable guideline range" and sentence length. *Gallegos*, 129 F.3d at 1143 (citation omitted). Moreover, Mr. McMahon's sentence was enhanced under the ACCA, and it is unclear whether this same enhancement applied to Ms. Thomas. Therefore, the disparity between the two sentences does not entitle Mr. McMahon to § 2255 relief.

Additionally, the Government's failure to file a downward departure on Mr. McMahon's behalf is no basis for § 2255 relief. As Mr. McMahon notes, the Government has "a power, not a duty, to file a motion when a defendant has substantially assisted." *Wade v. United States*, 504 U.S. 181, 185 (1992). A prosecutor's decision not to file a substantial assistance motion is subject to district court review only if "the refusal was based on an unconstitutional motive," such as the defendant's race or religion, *id.* at 185–86, or "was not rationally related to any legitimate Government end." *Id.* at 186.

Mr. McMahon claims "[t]he Government's refusal to move for downward departure was unconstitutionally motivated because: (1) it was a retaliatory action

for McMahon's exercise of a protected right (his insistence on trying the very charge that Thomas also denied); and (2) it was not rationally related to any government end." Aplt.Br. 25. We disagree. The magistrate judge noted "the government expressly declined to request a reduction for McMahon because McMahon refused to cooperate at the perjury trial unless he received use immunity and even then the government had to use prior sworn testimony to help McMahon 'remember.'" Report and Recommendation at 31 n.30. Thus, contrary to Mr. McMahon's assertion, the Government's refusal to move for a downward departure was based on factors other than his decision to continue his trial. Because the Government's reason was constitutionally permissible and rationally related to a government end, Mr. McMahon is not entitled to habeas relief on this claim.

## C.

Mr. McMahon next claims he is entitled to a COA because he was denied his Sixth Amendment right to effective assistance of counsel. He points to six specific instances of allegedly ineffective assistance. Before discussing the specifics, however, we note that each instance must fall below the standard announced in *Strickland v. Washington*, 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must

-13-

> show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687. The "deficient" prong requires a defendant to "show that counsel's representation fell below an objective standard of reasonableness," *id.* at 688, and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The "prejudice" component requires the defendant to prove "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. To determine if appellate counsel provided ineffective assistance by failing to raise an issue on appeal "we examine the merits of the omitted issue." *United States v. Cook*, 45 F.3d 388, 392 (10th Cir. 1995). If the omitted issue is meritless, counsel's failure to appeal it is not a Sixth Amendment deprivation. *Id.* at 392–93. We now address each of Mr. McMahon's claims.

*1. Trial Counsel Failed to Challenge the Classification of McMahon's 1981 Second Degree Burglary Conviction as a Qualifying Predicate Felony.*

Mr. McMahon's presentence report classified his 1981 Oklahoma second degree burglary conviction as a qualifying "violent felony" for purposes of sentence enhancement under the ACCA. Mr. McMahon claims his trial counsel was ineffective because he failed to object to that classification.

We need not reach this claim's merits. Mr. McMahon twice concedes in his

-14-

brief that, to secure relief from his ACCA enhancement, he must successfully prove both that his counsel was ineffective for failing to challenge the classification of his 1981 conviction and that the district court improperly relied on his 1986 conviction. *See* Aplt.Br. 10 n.4 ("In Proposition III.A., below, McMahon alleges his trial counsel rendered ineffective assistance in failing to challenge the classification of his 1981 state conviction for Second Degree Burglary as a predicate offense for §924(e) enhancement. McMahon concedes he must prevail on both propositions to warrant relief from his ACC[A] sentence."); *id.* at 34 n.5 ("As discussed in Proposition I, above, McMahon must prevail on both propositions to obtain relief from the §924(e) enhancement."). Since the district court properly enhanced Mr. McMahon's sentence based on his 1986 conviction, Mr. McMahon cannot satisfy *Strickland*'s prejudice component even if his counsel improperly failed to challenge the presentence report's classification of his 1981 conviction.

*2. Appellate Counsel Failed to Seek Appropriate Relief for Retroactive Misjoinder.*

Mr. McMahon next claims his appellate counsel was ineffective because he failed to raise the issue of retroactive misjoinder. Retroactive misjoinder is the concept that evidence adduced to support a claim that an appellate court vacates may have prejudiced any surviving counts. Mr. McMahon argues that this claim is not novel, so the failure to raise it constituted ineffective assistance of counsel.

We disagree because we find that his retroactive claim has no merit.

The Tenth Circuit has not developed a specific standard to determine when retroactive misjoinder occurs. However, the crux of retroactive misjoinder—that evidence presented at trial to support one charge can spill over to other charges—is familiar ground. We have articulated several standards for evaluating whether an evidentiary spillover prejudices a criminal defendant. These standards share a common feature—where the evidence supporting the contested charge is strong, evidentiary spillovers do not warrant relief. *See, e.g.*, *U.S. v. McClatchey*, 217 F.3d 823, 833 (10th Cir. 2000) (determining whether evidence introduced against coconspirators involved in separate conspiracies prejudiced a defendant); *U.S. v. Edwards*, 69 F.3d 419, 433 (10th Cir. 1995) (evaluating whether a variance between the indictment and evidence adduced during trial prejudiced the defendant). Courts that explicitly recognize claims for retroactive misjoinder also focus on the strength of the evidence supporting claims that survive appeal. *See, e.g.*, *United States v. Hamilton*, 334 F.3d 170, 182 (2d Cir. 2003). Accordingly, we evaluate the strength of the evidence against Mr. McMahon on the § 922(g) convictions to determine the merit of his retroactive misjoinder argument.

The Government's evidence against Mr. McMahon on the § 922(g) charges was extremely strong. For example, Mr. McMahon took the witness stand to testify to his possession of the shotgun. This evidence was more than sufficient

for the jury to convict Mr. McMahon. The claim that joining the § 924(c) charge prejudiced Mr. McMahon when there was overwhelming evidence of his guilt on the § 922(g) charges is meritless. Consequently, we conclude that Mr. McMahon's counsel did not render ineffective assistance when he failed to appeal this issue. *See Cook*, 45 F.3d at 392–93.

*3. Trial Counsel Failed to Present the Defense of Entrapment by Estoppel* .

Mr. McMahon next asserts his counsel's failure to present the defense of entrapment by estoppel constitutes ineffective assistance. "[E]ntrapment by estoppel is implicated where an agent of the government affirmatively misleads a party as to the state of the law and that party proceeds to act on the misrepresentation so that criminal prosecution of the actor implicates due process concerns under the Fifth and Fourteenth amendments." *United States v. Gutierrez-Gonzalez*, 184 F.3d 1160, 1166 (10th Cir. 1999) (emphasis omitted), *quoting United States v. Nichols*, 21 F.3d 1016, 1018 (10th Cir. 1994). To invoke this defense successfully, a defendant must show "an 'active misleading' by the government agent, and actual reliance by the defendant. Further, the defendant's reliance must be reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation." *Id.* (emphasis omitted), *quoting Nichols*, 21 F.3d at 1018.

Mr. McMahon claims dictum in *United States v. Sanders*, 18 F.3d 1488 (10th Cir. 1994), led him to believe it was lawful for him to possess the shotgun. However, even assuming the dictum was misleading and that he relied on it, his claim fails because he could not have shown that government agents actively misled him. The authors of the Sanders dictum presumably did not know Mr. McMahon and had no intention of leading him astray. At worst, it was an unfortunate misunderstanding by a federal court regarding a point of state law not necessary to the decision before it. Especially in light of our "highly deferential" review of counsel's actions, *Strickland*, 466 U.S. at 689, we can find neither deficiency nor prejudice in Mr. McMahon's counsel's decision not to advance an entrapment by estoppel defense.

*4. Trial Counsel Failed to Investigate Transfer of the Shotgun.*

Mr. McMahon argues that his trial counsel rendered ineffective assistance by failing to request an ATF form showing the transfer of the shotgun to Terry Young. This form did not appear in the Government's file, which trial counsel reviewed, and Mr. McMahon concedes that the Government did not present this form at trial. Mr. McMahon contends that if his trial counsel had obtained the form, he would have known that Mr. McMahon's proposed defense was a fabrication and he would have prevented Mr. McMahon from suborning perjury. Because evidence that he suborned perjury undermined Mr. McMahon's

credibility, he argues that his counsel's failure to investigate the ownership of the shotgun constituted deficient performance. Mr. McMahon raised this issue below, which the magistrate judge dismissed as "patently ridiculous." R&R 22. Even Mr. McMahon recognizes the "seeming absurdity" of imposing a duty on his counsel to save him from himself. Aplt.Br. 46. We agree with the magistrate judge. Mr. McMahon may not place the blame for his deceitful conduct on his trial counsel's shoulders. Any prejudice attributed to evidence that Mr. McMahon suborned perjury stemmed from his attempt to defraud the court rather than the failure of his trial counsel to trace possession of the shotgun.

*5. Trial Counsel Stipulated that the Ammunition and Shotgun Traveled in Interstate Commerce.*

Mr. McMahon argues that his trial counsel's decision to stipulate that the shotgun and ammunition traveled in interstate commerce was deficient performance. He contends that because § 922(g) requires that a firearm or ammunition travel in interstate commerce, conceding this point constituted ineffective assistance of counsel. Mr. McMahon raised this issue below and the court concluded that this decision did not fall below an objective standard of reasonableness. We agree. Deciding whether or not to concede an element of a statute is a tactical decision. We review tactical decisions made by trial counsel with substantial deference. *See Strickland v. Washington*, 466 U.S. 668, 689-91 (1984) (there is a strong presumption trial strategy was effective); *United States v.*

-19-

*Chavez-Marquez*, 66 F.3d 259, 263 (10th Cir. 1995) ("highly deferential" review for trial counsel's decision to stipulate to a prior conviction).

As the magistrate judge noted, it is standard practice in the Northern District of Oklahoma to stipulate to the interstate commerce requirement. In addition, the government presented testimony from an ATF agent that the shotgun and ammunition were not made in Oklahoma. Given this standard practice, and the testimony that the shotgun at issue would satisfy interstate commerce element, we cannot possibly conclude that it was objectively unreasonable for trial counsel to stipulate this point. Accordingly, we hold that this tactical decision did not constitute ineffective assistance of counsel.

*6. Trial Counsel Failed to Adequately Investigate Search and Seizure Issues.*

Mr. McMahon argues that his trial counsel did not adequately investigate evidence to support his suppression motion. To support this argument, Mr. McMahon points to information developed by a private investigator about the controlled buys that provided probable cause for the warrant to search his premises. An affidavit filed by this private investigator alleges a number of inconsistencies in the search warrant affidavits. The investigator claims that the Tulsa Police Department's property room could not produce receipts from the controlled buys that took place on August 31 and October 3, 1994. He contends that he requested these receipts twice, once in May 1998 and again in February

2000. In addition, he claims that a physical survey of the apartment building where the buys took place impeached allegations in the police officers' affidavits. Mr. McMahon's trial counsel did not conduct an independent investigation to counter the veracity of police officer accounts of the controlled buys. Instead, trial counsel presented testimony from an alibi witness attesting that Mr. McMahon was in her presence during the buys. Mr. McMahon argued this point below and the court concluded that this failure to investigate did not amount to ineffective assistance of counsel. We agree.

A habeas petitioner cannot succeed on an ineffective assistance claim by showing that there was some evidence that the trial counsel failed to investigate. Rather, the habeas petitioner must demonstrate that the failure to investigate additional evidence was objectively unreasonable and would have produced a different result at trial. *Strickland*, 466 U.S. at 687. Even if we assume that an investigation by Mr. McMahon's trial counsel would have produced the information developed by the private investigator, he fails to show that this information "undermine[s] confidence in the outcome" of his trial. *Id.* at 694.

At the suppression hearing McMahon's trial counsel argued that there were inconsistencies in search warrant affidavits provided by officers involved in the controlled buy. Despite trial counsel's efforts to impeach the search warrant affidavits, the trial court denied the suppression motion, noting that the officers'

testimony was more believable than the testimony of Mr. McMahon and his alibi witness. At most, the information in the private investigator's affidavit, which has not been subjected to adversarial testing, would have diminished the credibility of the officers' testimony. That the police department could not produce receipts some three to five years after the events in question does not mean the events did not take place, and factual discrepancies not necessarily going to the ultimate issue are highly unlikely to have led the court to a different result. Accordingly, we reject Mr. McMahon's argument that his trial counsel provided ineffective assistance by failing to investigate the testimony of officers involved with the controlled buy. Because we can resolve Mr. McMahon's claim that his trial counsel failed to investigate the officers' testimony on the record before us, we deny his request to remand for an evidentiary hearing on this matter. *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999).

## D.

Finally, Mr. McMahon argues that he is actually innocent and was only convicted as a result of officers lying in their search warrant affidavits. He asserts that habeas relief is appropriate because the officers' actions constituted egregious misconduct by the government. Mr. McMahon did not raise this issue at trial or on direct appeal. In most cases, the failure to raise an issue at trial or on direct appeal results in waiver of the claim. *See, e.g.*, *U.S. v. Cervini*, 379

F.3d 987, 990 (10th Cir. 2004) ("A § 2255 motion is not intended as a substitute for an appeal."). However, Mr. McMahon argues that the misconduct by the government was a "fundamental miscarriage of justice" that justifies an exception to any procedural bar. *Id*. at 990-91 (where a failure to consider federal claims will result in a fundamental miscarriage of justice the procedural bar does not apply). Moreover, he argues that his trial counsel's failure to raise this argument amounted to ineffective assistance. We may combine our analysis of these two arguments. Where a claim has no merit, the failure to raise the issue is not constitutionally deficient performance. *See Cook*, 45 F.3d at 393 (10th Cir. 1995). Because we conclude that Mr. McMahon's claim that his prosecution was a fundamental miscarriage of justice has no merit, the failure to raise this issue was not ineffective assistance of counsel.

To demonstrate that his allegations of misconduct by the government produced a fundamental miscarriage of justice, Mr. McMahon must show that a constitutional violation probably caused the conviction of an innocent person. *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). To support his contention that he was actually innocent Mr. McMahon must provide "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Mr. McMahon provides no new and reliable

evidence to support his claim of actual innocence. Instead, he rehashes evidence that was available at trial and speculates, without any credible evidence, that the Government acted deceitfully. These arguments do little to counter the strongest piece of evidence pointing to his guilt—his sworn testimony attesting to possession of the shotgun. Mr. McMahon's claim of egregious misconduct by the government has no merit and we reject it.

III.

Accordingly, we **DENY** Peter J. McMahon's request for a certificate of appealability and **DISMISS** this appeal.

Entered for the Court,

PATRICK FISHER, Clerk